**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

Case No.:

SAMUEL EPPY, individually and
on behalf of all others similarly situated,

*Plaintiff*,

vs.

EQUIFAX, INC,

*Defendant*.
______________________________________/

## CLASS ACTION COMPLAINT

Plaintiff, SAMUEL EPPY ("Plaintiff" or "EPPY"), individually, and on behalf of all others similarly situated (the "Class" or "Class Members"), by and through his undersigned counsel, hereby files this Class Action Complaint against Defendant, EQUIFAX, INC, ("EQUIFAX" or "Defendant"), and allege as follows:

## NATURE OF THE ACTION

1. Pursuant to Rules 23(a), (b)(2), and (b)(3), *Federal Rules of Civil Procedure*, Plaintiff bring this action as a class action against Defendant EQUIFAX for its negligent failure to adequately protect the PII (Personally Identifiable Information) of the Class and for failing to timely notify the Class that their PII had been stolen from Defendant's computer system. Plaintiff seeks to recover damages caused to him and the Class and Subclasses caused by Defendant's violations of law. Plaintiff seeks injunctive relief requiring Defendant to properly safeguard the Class's PII on its computer systems.

2. Defendant failed to provide adequate computer and network security measures, which allowed for an intrusion in to Defendant's computer network. Such failure resulted in the unauthorized access to personal, confidential and sensitive data of approximately 143 million consumers in the United States.

3. Defendant's failure to maintain reasonable and adequate procedures to protect and secure Plaintiff and the Class Members' PII and failure to provide Plaintiff and the Class Members with timely notice of the Breach, has resulted in Plaintiff and the Class being placed in danger of identity theft and other possible fraud and abuse.

4. Plaintiff and the Class have suffered irreparable damage and will continue to suffer irreparable damage from the misuse of their PII. As a proximate result of the breach, Plaintiff and the Class have had their PII compromised, their privacy invaded, have incurred or will incur out-of-pocket costs, and have otherwise suffered economic damages. Plaintiff expressly reserves the right to supplement this Class Action Complaint as additional facts and evidence come to light, are disclosed by Defendant, or are otherwise discovered.

## PARTIES, JURISDICTION, AND VENUE

5. Plaintiff, SAMUEL EPPY, is an individual over 18 years of age who resides in Broward County, Florida.

6. Defendant EQUIFAX is organized under the laws of the state of Georgia and maintains its principal executive offices at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309. In public filings with the Securities and Exchange Commission, Defendant describes its business as "a leading global provider of information solutions, employment and income verifications and human resources business process outsourcing services" that "leverage[s] some of the largest sources of consumer and commercial data, along with advanced analytics and proprietary

technology, to create customized insights which enable our business customers to grow faster, more efficiently and more profitably, and to inform and empower consumers."

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) because this is a class action lawsuit in which the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the Class Members are citizens of different states throughout the United States.

8. Venue is proper in this Judicial District under 28 U.S.C. § 1391(a)(2), (b), and (c) because, as alleged herein, Defendant has conducted and transacted substantial business in this Judicial District, a substantial portion of the events and conduct giving rise to violations complained of in this action occurred in this Judicial District, and Defendant conducts business with consumers in this Judicial District.

## FACTUAL ALLEGATIONS

9. Plaintiff and the Class Members are citizens of different states.

10. Defendant EQUIFAX is a global provider of information solutions and human resources business process outsourcing services for businesses, governments and consumers. The Company operates in four segments: U.S. Information Solutions (USIS), International, Workforce Solutions and Global Consumer Solutions. Its products and services are based on databases of consumer and business information derived from various sources, including credit, financial assets, telecommunications and utility payments, employment, income, demographic and marketing data.

11. As part of its products and services, Defendant collects, stores and transmits its Class members' personal and proprietary information in their facilities and on its equipment,

networks and corporate systems. Indeed, before the information complained of herein, Defendant's website stated:

> For more than 100 years, Equifax has been a catalyst for commerce by bringing businesses and consumers together. Equifax also provides products and services that bring businesses together with other businesses.
>
> We have built our reputation on our commitment to deliver reliable information to our customers (both businesses and consumers) and to protect the privacy and confidentiality of personal information about consumers. We also protect the sensitive information we have about businesses. Safeguarding the privacy and security of information, both online and offline, is a top priority for Equifax.[1]

12. Unfortunately, Defendant did not "protect the privacy and confidentiality of PII about consumers." Defendant did the opposite as they failed to provide adequate computer and network security measures, which allowed for an intrusion in to Defendant's computer network. Such failure resulted in the unauthorized access to personal, confidential and sensitive data that has the potential to affect approximately 143 million U.S. Consumers.[2] This data that was stolen includes names, Social Security numbers, birth dates, addresses, credit card numbers, and other PII. [3]

13. Numerous state statutes across the country recognize the sensitivity and utmost level of security required for this type of data. The PII at issue in this case includes without limitation names, social security numbers, addresses, birth dates, credit cards, driver's license numbers and other yet to be fully discovered highly-sensitive and personal data of Plaintiff and the Class Members.

---

[1] *Privacy*, EQUIFAX https://web.archive.org/web/20170331195307/https://www.equifax.com/privacy (last visited Sept. 18, 2017).

[2] "Equifax Announces Cybersecurity Incident Involving Consumer Information," Sept. 7, 2017, https://investor.equifax.com/news-and-events/news/2017/09-07-2017-213000628 (last visited Sept. 18, 2017).

[3] *Id*.

14. The nature of the PII makes it susceptible to abuse, theft and exploitation, and requires the utmost protection in its storage and handling.

15. Data breaches cost American consumers hundreds of millions of dollars a year. According to the Identity Theft Resource Center, over a billion records have been exposed since 2005, many of which as a result of data breaches that occurred during that time span.[4] The present case stems from one of the largest and unprecedented breaches involving PII data to date. The PII at issue in this case is highly valuable in underground criminal exchanges because the information is not only highly confidential, it can also be used to engage in insurance and tax fraud.

16. Defendant's failure to provide adequate cyber security measures has resulted in the exposure of sensitive and highly confidential personal data and/or PII.

17. As a result of Defendant's failure to adequately protect Plaintiff's and the Class Members' highly sensitive PII, this information has been compromised.

18. Defendant's failure to maintain reasonable and adequate procedures to protect and secure Plaintiff's and the Class Members' PII and failure to provide Plaintiff and the Class Members with timely notice of the Breach, has resulted in Plaintiff and the Class being placed in danger of identity theft and other possible fraud and abuse.

19. Plaintiff and the Class have suffered irreparable damage and will continue to suffer irreparable damage from the misuse of their PII. As a proximate result of the breach, Plaintiff and the Class have had their PII compromised, their privacy invaded, have incurred or will incur out-of-pocket costs, and have otherwise suffered economic damages. Plaintiff expressly reserves the right to supplement this Class Action Complaint as additional facts and evidence come to light, are disclosed by Defendant, or are otherwise discovered.

---

4. "Data Breaches," Sept. 12, 2017, http://www.idtheftcenter.org/Data-Breaches/data-breaches (last visited Sept. 15, 2017).

## CLASS ACTION ALLEGTIONS

20. Plaintiff brings this action on behalf of himself and all others similarly situated as permitted by Rules 23(a), (b)(2), and (b)(3), *Federal Rules of Civil Procedure*. The proposed Class consists of:

> **All current and future residents of Florida who EQUIFAX collected personal information from and/or all future and current residents of Florida whose PII was compromised in the data breach disclosed by EQUIFAX.**

21. Plaintiff respectfully reserve the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified, including without limitation, the inclusion of sub-classes.

22. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded is any judge or judicial staff member to whom this action is assigned, together with any relative of such judge or judicial staff member, and the spouse of any such persons.

23. The Class is so numerous that joinder of such individuals is impracticable.

24. The common questions of law and fact among all Class Members predominate over any issues affecting any individual Class Members and include the following:

a. Whether Defendant acted wrongfully by failing to properly safeguard PII for whom Defendant collected PII on its computer system;

b. Whether Defendant's conduct violated the law;

c. Whether Defendant took reasonable measures to determine the extent of the Breach;

d. Whether Defendant acted negligently in failing to implement and maintain

commercially reasonable procedures to secure Plaintiff's and Class Members' PII;

e. Whether Defendant acted negligently in delaying or failing to inform Plaintiff and Class Members of the Breach;

f. Whether Defendant's conduct constitutes negligence;

g. Whether Defendant's conduct was unfair, deceptive, and/or unconscionable;

h. Whether Plaintiff and the Class Members have sustained monetary loss and the proper measure of that loss;

i. Whether Plaintiff and the Class Members have sustained consequential loss, and, if so, to what measure; and

j. Whether Plaintiff and the Class Members are entitled to declaratory and injunctive relief.

25. Plaintiff will fairly and adequately protect the interests of the Class.

26. Plaintiff's claims are typical of those of other Class Members, as there are no material differences in the facts and law underlying their claims and Plaintiff's prosecution of their claims will advance the claims of all Class Members.

27. Plaintiff has retained competent counsel experienced in the prosecution of this type of Class litigation.

28. Class treatment of the claims set forth in this Class Action Complaint is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for the proposed Class Members to prosecute their claims individually. Absent a class action, a multiplicity of individual lawsuits would be required to address the claims between the Class Members and Defendant so that inconsistent treatment and adjudication of the claims would likely result.

29. The litigation and trial of Plaintiff's claims are manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the readily ascertainable identities of many Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

30. Adequate notice can be given to Class Members directly using information maintained in Defendant's records or through publication.

31. Unless a class-wide injunction is issued, Defendant may fail to properly secure the PII of Plaintiff and Class Members, may continue to refuse to provide proper notification to Plaintiff and Class Members regarding the scope of the Breach, and may continue to act unlawfully as set forth in this Class Action Complaint.

32. Defendant has acted or refused to act on grounds that apply generally to the Class, making final injunctive and declaratory relief appropriate to the Class as a whole.

33. Defendant's acts and omissions are the direct and proximate cause of damage described more fully in the succeeding paragraphs of this Class Action Complaint.

## SUBSTANTIVE ALLEGATIONS

34. Plaintiff is among the hundreds of millions of Americans who have applied for a loan or had their credit pulled for one reason or another, and thus for whom Defendant has compiled sensitive and confidential PII. Additionally, because Plaintiff is employed in the financial services industry, his PII is frequently used to access sensitive financial business and client information.

35. Defendant collected and stored Plaintiff's Defendant on its computer system and used that information for, among other things, profit.

36. On September 7, 2017, Defendant issued a press release announcing "a cybersecurity incident potentially impacting approximately ***143 million U.S. consumers.***[5]"

37. The Breach allegedly occurred from mid-May through July 2017, and Defendant apparently learned of the breach discovering the unauthorized access on July 29, 2017, *forty days* before the Breach was disclosed.

38. Even after forty days, Defendant's disclosure of the Breach was woefully deficient. As reported by *Tech Crunch*,

> Equifax just announced a massive data breach that could affect 143 million consumers. It's shaping up to be one of the largest hacks of all time. The information came mostly from U.S. residents, but a percentage also involved U.K. and Canadian citizens and the company is working with authorities from these countries.
>
> The company established a website to allow consumers to see if their data was stolen. But it's broken and sets the user up for TrustedID, a credit monitoring service owned by, wait for it, Equifax.
>
> Equifax says that this site will "indicate whether your personal information may have been impacted by this incident." That is false as of this post's publication. The company also says it will provide the checker with an "option" to enroll in TrustedID Premier. That's also false. When a user inputs their data into the system, a message appears that the user can be enrolled in TrustedID Premier at a later date. Mine was 9/11/2017.
>
> This is completely irresponsible by Equifax.
>
> The site's terms of service seem to state that by agreeing to use this service, the user is waving their rights to bring a class action lawsuit against Equifax.
>
> We have a note out to the company asking for clarification about this site's capabilities, function and any rights forfeited. Until questions are answered, I would avoid using the site.

[5] "Equifax Announces Cybersecurity Incident Involving Consumer Information," Sept. 7, 2017, https://investor.equifax.com/news-and-events/news/2017/09-07-2017-213000628 (last visited Sept. 18, 2017).

This is essentially the site right now.

…

EQUIFAX: we may have leaked your SSN

ALSO EQUIFAX: give us your SSN to see if we leaked it.[6]

**COUNT I**

**Negligence**

39. Plaintiff adopts and realleges the allegations contained within paragraphs one (1) through thirty-eight (38), *supra*, as if fully set forth herein.

40. Defendant owed a duty to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting PII in its possession from being compromised, lost, stolen, accessed and misused by unauthorized persons. This duty included, among other things, designing, maintaining, and testing Defendant's computer network security systems to ensure that Plaintiff and the other members of the Class' PII in Defendant's possession were adequately secured and protected. Defendant further owed a duty to Plaintiff and the other members of the Class to implement processes that would timely detect a breach of its computer security and to prevent mass exports of PII out of Defendant's computer network.

41. Defendant owed a duty of care to Plaintiff and the other members of the Class and Subclasses because there was a reasonable expectation that Defendant would keep PII secure and confidential. Defendant solicited, gathered, and stored the PII for its own business purposes. Defendant, in the absence of negligence, would have known by holding massive amounts of PII it was a lucrative target for hackers and a breach of its computer security systems and the stealing of

[6] "Equifax Data Breach Help Site Leaves Consumers with More Questions than Answers," TECHCRUNCH, Sept. 7 2017, https://techcrunch.com/2017/09/07/equifax-data-breach-help-site-leaves-consumers-with-more-questions-than-answers/ (last visited Sept. 18, 2017).

PII would damage to Plaintiff and the other members of the Class. Defendant had a duty to adequately protect such the Class's PII from hackers.

42. Plaintiff and other members of the Class relied on Defendant to safeguard their PII that it collected, used and stored and was in a position to (and capable of) protecting against the harm caused to Plaintiff and the other members of the Class as a result of the Breach.

43. Defendant's conduct created a foreseeable risk of harm to Plaintiff and the other members of the Class. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to effectively encrypt, and then to prevent and stop the Breach, and to timely detect and disclose the Breach as set forth herein.

44. Defendant breached the duties it owed to Plaintiff and the other members of the Class by failing to exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the PII of Plaintiff the members of the Class.

45. Defendant breached the duties it owed to Plaintiff and the other members of the Class by failing to properly implement technical systems or security practices that could have prevented the loss of the confidential data at issue.

46. Plaintiff and the other members of the Class were damaged by Defendant's breach of this duty as a direct and proximate result of Defendant's conduct suffered damages including, but not limited to, loss of control of their PII, an added burden and cost of heightened monitoring for signs for identity theft and for undertaking actions such as credit freezes and alerts to prevent identity theft, and remediating acts and damages caused by identity theft, and other economic damages.

**COUNT II**

**Negligence *per se***

47. Plaintiffs adopt and reallege the allegations contained within paragraphs one (1) through thirty-eight (38), *supra*, as if fully set forth herein.

48. Defendant had a duty to secure and safeguard the personal information of its customers pursuant to Florida Statute §501.171 and other state and federal law.

49. At all times material hereto, Defendant warranted that it would comport with its duties under §501.171.

50. Defendant violated §501.171 and other federal and state law by failing to secure and safeguard the PII records belonging to Plaintiff and other members of the Class.

51. Defendant also had a duty under §501.171 to timely notify the Department of Legal Affairs of Florida, Plaintiffs and the Class.

52. Defendant violated §501.171 by allowing for the breach of Plaintiff and the Classes PII and for failing to timely notify the Department of Legal Affairs of Florida, Plaintiff and the Class of the breach.

53. Defendant also has a duty to notify third-party agents and reporting agencies of the breach and those consumers affected by the breach, which, based upon information and belief, it failed to do.

54. Plaintiffs and the Class have suffered damages as a result of Defendants' negligence *per se*. As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered damages in the past and will suffer future damages, including the lost monetary value of their PII, the costs associated with protecting their PII now that it has been exposed, the value of time spent dealing with the breach, the loss of their right to privacy, and other damages.

**COUNT III**

**Violations of Florida's Deceptive and Unfair Trade Practices Act**

55. Plaintiff adopts and realleges the allegations contained within paragraphs one (1) through thirty-three (33), *supra*, as if fully set forth herein.

56. The Florida Deceptive and Unfair Trade Practices Act (hereinafter "FDUTPA") is expressly intended to protect "consumers" like Plaintiff and Class Members from unfair or deceptive trade practices.

57. Plaintiff and Class Members have a vested interest in the privacy, security and integrity of their PII, therefore, this interest is a "thing of value" as contemplated by FDUTPA.

58. Defendant is a "person" within the meaning of the FDUTPA and, at all pertinent times, was subject to the requirements and proscriptions of the FDUTPA with respect to all of their business and trade practices described herein.

59. Plaintiff and Class Members are "consumers" "likely to be damaged" by Defendant's ongoing deceptive trade practices.

60. Defendant's unlawful conduct as described in this Class Action Complaint, was facilitated, directed, and mandated from Defendant's headquarters to the detriment of Plaintiff and the Class.

61. Defendant engaged in unfair and deceptive trade practices by holding itself out as being a leader in managing and protecting consumers PII, which created in its customers minds a reasonable expectation of privacy by promising that their PII is safe, but then failed to take commercially reasonable steps to protect the PII with which it is entrusted.

62. Defendant violated FDUTPA by failing to properly implement adequate, commercially reasonable security measures to protect Plaintiff's and the Class' sensitive PII, as well as otherwise failing to comply with state law concerning the security and safeguarding of PII.

63. Defendant also violated FDUTPA by failing to immediately notify affected consumers, such as Plaintiff and the Class of the nature and extent of the Breach.

64. Defendant represents its services as having a particular standard and quality. Contrary to this representation, Defendant failed to properly implement adequate, commercially reasonable security measures to hold PII in strict confidence, failed to safeguard Plaintiff's and Class Members' PII, failed to comply with state laws concerning the security and safeguarding of PII and failed to protect against the foreseeable loss and misuse of this information.

65. Plaintiff and the Class have suffered ascertainable losses as a direct result of Defendant's employment of unconscionable acts or practices, and unfair or deceptive acts or practices.

66. Under FDUPTA, Plaintiff and the Class are entitled to preliminary and permanent injunctive relief without proof of monetary damage, loss of profits, or intent to deceive. Plaintiff and the Class seek equitable relief and to enjoin Defendant on terms that the Court considers appropriate.

67. Defendant's conduct caused and continues to cause substantial injury to Plaintiff and the Class. Unless preliminary and permanent injunctive relief is granted, Plaintiff and the Class will suffer harm, Plaintiff and the Class Members do not have an adequate remedy at law, and the balance of the equities weighs in favor of Plaintiff and the Class.

68. As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered damages in the past and will suffer future damages, including the lost monetary value of their PII, the costs associated with protecting their PII now that it has been exposed, the value of time spent dealing with the breach, the loss of their right to privacy, and other damages.

69. At all material times, Defendant's deceptive trade practices are willful within the meaning of FUDTPA and, accordingly, Plaintiff and the Class are entitled to an award of attorneys' fees, costs and other recoverable expenses of litigation.

## COUNT IV

### Unjust Enrichment

70. Plaintiff adopts and realleges the allegations contained within paragraphs one (1) through thirty-three (33), *supra*, as if fully set forth herein.

71. Plaintiff and members of the had their PII collected and sold by Defendant. That information conferred a monetary benefit on Defendant.

72. Defendant knew that Plaintiff's and the Class' information conferred a benefit on Defendant, which profited by using their PII for its own business purposes.

73. Defendant failed to secure the Plaintiff's and Class members' PII, and acquired the PII through inequitable means because it failed to disclose the inadequate security practices previously alleged.

74. Had Plaintiff and Class members known that Defendant would not secure their PII using adequate security, they would have requested Defendant destroy or not retain such information.

75. Plaintiff and the Class have no adequate remedy at law.

76. Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiff and Class members' PII conferred on it.

77. Defendant should be compelled to disgorge into a common fund or constructive trust for the benefit of the proceeds it received from processing and selling Plaintiff and Class members' PII.

## COUNT V

**Declaratory Judgement**

78. Plaintiff adopts and realleges the allegations contained within paragraphs one (1) through thirty-three (33), *supra*, as if fully set forth herein.

79. As previously alleged, Defendant owed duties of care to Plaintiff and the members of the Class that require it to adequately secure PII.

80. Defendant still possesses PII regarding the Plaintiff and the Class members.

81. After the Breach, Defendant announced changes that it claimed would improve data security. These changes, however, did not fix many systemic vulnerabilities in Defendant's computer systems. An "FAQ" posted to https://www.equifaxsecurity2017.com/frequently-asked-questions/, states that "to prevent this from happening again" Defendant has "engaged a leading, independent cybersecurity firm to conduct an assessment and provide recommendations on steps that can be taken to help prevent this type of incident from happening again."

82. Accordingly, Defendant still has not satisfied its obligations and legal duties to Plaintiff and the Class members.

83. Actual harm has arisen in the wake of Defendant's data breach regarding its obligations and duties of care to provide security measures to Plaintiff and the members of the Class and Subclasses. Defendant does not maintain that its security measures now are adequate to meet Defendant's contractual obligations and legal duties.

84. Plaintiff, therefore, seek a declaration (a) that Defendant's existing security measures do not comply with its contractual obligations and duties of care to provide adequate security, and (b) that to comply with its obligations and duties of care, Defendant must implement

and maintain reasonable security measures, including, but not limited to: (1) ordering that Defendant engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors; (2) ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring; (3) ordering that Defendant audit, test, and train its security personnel regarding any new or modified procedures; (4) ordering that Defendant's segment Class members' data by, among other things, creating firewalls and access controls so that if one area of Defendant is compromised, hackers cannot gain access to other portions of Defendant's systems; (5) ordering that Defendant purge, delete, and destroy in a reasonably secure manner Class members' data not necessary for its provisions of services; (6) ordering that Defendant conduct regular database scanning and securing checks; and (7) ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

## RELIEF SOUGHT

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks relief as more fully set forth in this Complaint as follows:

A. For an order certifying that the action may be maintained as a Class action, under Rule 23, *Federal Rules of Civil Procedure*, and certifying Plaintiff as a Class Representative, and designating his counsel as Counsel for the Class;

B. Finding that Defendant breached its duty to safeguard and protect Plaintiff's and the Class' PII, obtained and/or stored on Defendant's computer network;

C. Finding that Defendant breached its duty to timely notify Plaintiff and the Class about the breach;

D. For an award of declaratory and equitable relief as follows:

   a. Requiring Defendant to adequately safeguard Plaintiff's and Class Members' PII, which may include subjecting itself to an independent audit to ensure this information is destroyed;

   b. Enjoining Defendant from engaging in similar unfair, unlawful, and deceptive misconduct in the future;

   c. Requiring Defendant to engage in a correct notice campaign.

E. For an award of attorney's fees and costs;

F. For an award of damages to be determined at trial; and

G. For any further legal and equitable relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on issues so triable.

**Respectfully submitted,**

Dated: September 20, 2017

*/s/ Joshua H. Eggnatz, Esq.*
Joshua H. Eggnatz, Esq.
Fla. Bar. No.: 0067926
Michael J. Pascucci, Esq.
Fla. Bar. No.: 83397
**EGGNATZ PASCUCCI, P.A.**
5400 S. University Drive, Ste. 417
Davie, FL 33328
Tel: (954) 889-3359
Fax: (954) 889-5913
Mpascucci@ELPLawyers.com
JEggnatz@ELPLawyers.com

*Attorneys for Plaintiff*
*and the Proposed Class*